# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | |
|---|---|
| PAMELA S. HALEY, | Case No. 3:16-cv-00383 |
| Plaintiff, | |
| vs. | Magistrate Judge Sharon L. Ovington |
| | (by full consent of the parties) |
| NANCY A. BERRYHILL, COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

# DECISION AND ENTRY

## I.

A Social Security Administrative Law Judge (ALJ), Benjamin Chaykin, denied Plaintiff Pamela S. Haley's applications for Disability Insurance Benefits and Supplemental Security Income on the ground that she was not under a disability. Plaintiff brings the present case challenging ALJ Chaykin's non-disability decision. She contends that he erred by discrediting her testimony and by failing to fully consider the vocational expert's testimony. She seeks an order remanding this matter with the finding that she was under a disability.

The Commissioner finds no error in the ALJ's decision and contends that substantial evidence supports the ALJ's findings. The Commissioner therefore asks the Court to affirm the ALJ's non-disability decision.

**II.**

Plaintiff asserts that starting on February 27, 2014, she has been under a benefits-qualifying disability. She was over age 55 at that time and was therefore considered to be a "[p]erson of advanced age" under social security law. 20 C.F.R. §§ 404.1563(e), 416.1563(e).[1] She has a high-school education. Her past employment involved work as "policy checker," a sedentary job that typically involves verifying the accuracy of insurance-company records. *See* Dictionary of Occupational Titles, 219.482-014.

Before issuing his decision, ALJ Chaykin held a hearing during which Plaintiff testified that she stopped working in February 2014 because she had a seizure. The whole left side of her body was shaking. At the emergency room, a CAT scan revealed a large mass on the right side of her brain. This mass caused her seizure. She underwent surgery to have the mass removed. Plaintiff's medical records confirm that she had a large right midparasagittal meningioma resected on March 14, 2014. (Doc. #4, *PageID* # 359). One month later, she underwent gamma knife radiosurgery to remove residual disease. *Id*. at 660. Plaintiff takes anti-seizure medication that, she says, has caused her to gain 40 pounds. *Id*. at 77. She has also had headaches about once a week. She describes them as "really annoying." *Id*. at 85.

---

[1] Remaining citations to the Regulations will be to those applicable to resolving applications for Disability Insurance Benefit with full knowledge of the corresponding Supplemental Security Income Regulations.

Plaintiff testified that her foot feels like it wants to drop. She described it as "really bad drop foot." *Id*. at 67. Because of this she wears a leg brace "that goes clear up underneath [her] foot and all the way up behind [her] knee." *Id*. at 66. Plaintiff medical records from April 3, 2014 indicate that although she was seizure free, she had left-leg weakness and "left foot drop and numbness in the left leg from [her] calf down…." *Id*. at 359. Plaintiff testified that she cannot sit or stand for very long because her left leg gets numb. If she stands after she has sat for too long, she loses all feeling in her left foot. *Id*. at 68. This prevents her from driving long distances or for more than 15 minutes. If she drives longer than this, she must stop and stretch her legs. *Id*. at 68-69. She further testified, "I'm just petrified I'm going to have another [seizure]." *Id*. at 68. She also has osteoarthritis in both knees. This makes it difficult for her to sit down. She needs to hold onto something when she sits down or stands up. *Id*. at 84. She added that her knees "lock up," and she "can hear them popping" when she walks. *Id*.

Plaintiff has anxiety and panic attacks. When this happens, she can't breathe and feels "like everything is caving in on [her]." *Id*. at 73. An attack like this happens when she feels overwhelmed by something she cannot do, like paying her bills. *Id*. at 74. Her primary-care physician treats her anxiety and panic attacks with Paxil. She has never seen a psychiatrist or psychologist. She has difficulty sleeping. She tosses and turns all night long. *Id*. at 78. If she takes melatonin, she will sleep "on and off" for a few hours but it makes her groggy. If she does not take melatonin, she will be awake all night. Her "brain … just won't shut down so [she] can sleep." *Id*. at 80.

Her past work as an insurance-policy checker required her to sit at a desk all day, typing. She also talked on the phone with insurance companies or homeowners. She testified that she no longer had the ability to concentrate and focus, as the job required. *Id*. at 83. She explained, "I'll start one thing, and then I'll end up doing another. And then I'll go back to the first thing and think, didn't I really start this? I forget at the time what I'm doing." *Id*. at 84.

During a typical day, Plaintiff gets out of bed, eats breakfast then gets on Facebook. She might drive to see her grandchildren—they live just a few blocks away. She might watch TV or do a load of laundry. She cooks easy meals. She cannot stand long enough to cook something complicated.

The ALJ also questioned a vocational expert during the hearing. The vocational expert testified that a hypothetical person with Plaintiff's limited ability to perform sedentary work could perform her past relevant work as a policy checker. *Id*. at 89. The vocational expert further testified that this hypothetical person could work as a policy checker even if she were off task for 5 percent of the workday, in addition to normal breaks. *Id*. at 89-90. The ALJ then asked, "At what point would a percentage of time off task be so great that it would preclude this hypothetical claimant from performing the past work as a policy checker?" *Id*. at 90. The vocational expert answered, "I would say greater than 10 percent of the workday…." *Id*.

## III.

Plaintiff's eligibility for Disability Insurance Benefits and Supplemental Security Income turned on whether she was under a "disability" as the Social Security

4

Act narrowly defines it. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see* 42 U.S.C. §§ 423(a)(1)(E), 1382(a). An individual's health problems constitute social-security-eligible disabilities only when their physical or mental impairments are of such severity that they (1) cannot do their previous work, and (2) cannot, "considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy …." 42 U.S.C. §§ 423(d)(2)(A), 1392c(a)(3).

As indicated previously, it fell to ALJ Chaykin to evaluate the evidence and determine whether Plaintiff was under a disability. He did so by considering each of the five well-known sequential steps described by the Regulations. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)[2]; *see also Rabbers*, 582 F.3d at 652. Moving through some initial findings, the ALJ reached steps 2 and 3 where he found that Plaintiff's severe impairments—"benign brain tumor and surgery residuals, chronic deep vein thrombosis in left lower extremity, obesity, and bilateral knee osteoarthritis"—did not automatically constitute disabilities. (Doc. #4, *PageID* #s 45-47). At step 4, the ALJ assessed Plaintiff's work abilities and limitations (her so-called residual functional capacity[3]) as follows:

---

[2] Remaining citations to the Regulations will be to those applicable to resolving applications for Disability Insurance Benefit with full knowledge of the corresponding Supplemental Security Income Regulations.

[3] The Social Security Administration refers to what a person can do as his or her "residual functional capacity." *See* 20 C.F.R. § 404.1545(a); *see also Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).

5

> [Plaintiff] has the residual functional capacity to perform sedentary work … except: (1) no climbing of ropes, scaffolds, or ladders; (2) occasional climbing of ramps or stairs; (3) occasional stooping, kneeling, crouching and balancing; (4) no crawling; (5) occasional use of foot controls; (6) no exposure to dangerous hazards such as unprotected heights or dangerous equipment; (7) no commercial driving and; .., (8) she will be off task 5% of the work time in additional to normal breaks.

*Id*. at 47-48. The ALJ next found that Plaintiff could perform work as a "policy checker (DOT 219.4820014, sedentary, SVP 5). This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity." (Doc. #4, *PageID* #51). This meant she was not under a disability and not entitled to benefits. *Id*.

The present review of ALJ Chaykin's decision determines whether he applied the correct legal standards and whether substantial evidence supports his findings. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). If he failed to apply the correct legal criteria, his decision may be fatally flawed even if the record contains substantial evidence supporting his findings. *Rabbers*, 582 F.3d at 651; *see Bowen*, 478 F.3d at 746; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004). Substantial evidence supports a finding when "a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance ...." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

**IV.**

Plaintiff argues that ALJ Chaykin erred in discrediting her testimony by relying on medical records showing improvement in her condition. According to Plaintiff, this was an improper reason for not finding her credible because she never testified that she had not improved. Plaintiff further argues that the ALJ erred by identifying her medical conditions without citing "to a specific instance of contradiction by [Plaintiff]." (Doc. #8, *PageID* #1251).

The Commissioner contends that the ALJ properly evaluated Plaintiff's credibility by considering her testimony during the hearing, the objective medical evidence, her activities of daily living, her ability to interact with others, and her reports to the agency about her ability to work. (Doc. #12, *PageID* #1268 (citing Doc. #4, *PageID* #s 45-50)).

"There is no question that subjective complaints of a claimant can support a claim for disability, if there is also objective medical evidence of an underlying medical condition in the record." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003). ALJs, however, are not required to accept as credible a claimant's subjective reports of pain and other symptoms and "may properly consider the credibility of the claimant." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) (citation omitted); *see Jones*, 336 F.3d 476. An ALJ's credibility findings "are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility. Nevertheless, an

ALJ's assessment of a claimant's credibility must be supported by substantial evidence." *Walters*, 127 F.3d at 531 (citations omitted).

Contrary to the Commissioner's contentions, the ALJ's assessment of Plaintiff's credibility is flawed and not supported by substantial evidence. When discussing his reasons for discounting Plaintiff's credibility, the ALJ began with a correct statement of law, stating, "one strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record." (Doc. #4, *PageID* #50). Although this statement is correct as a matter of law, the ALJ's next conclusion imposes an incorrect legal standard. The ALJ wrote:

> Based on a consideration of all of the evidence in the case record, the undersigned finds that the claimant's statements are not fully consistent with the medical signs and laboratory findings and other information provided by medical sources, including the longitudinal medical record, to a degree that supports a finding of disability. Specifically, the claimant has alleged an inability to work (i.e. in the functional reports, disability reports, testimony, etc.); however, as shown above, the medical record does not contain evidence of symptoms, signs, and laboratory findings that would support the claimant's allegations, at least to the severity alleged.

*Id*. The problem here is that by requiring the medical evidence to "fully support" Plaintiff's statements, the ALJ measured her credibility under a higher standard than required by the applicable Regulations. Rather than requiring a claimant's statements to be fully supported by the evidence, the Regulations state, "In determining whether you are disabled, we consider all your symptoms, including pain, and the extent to which your symptoms can reasonably be accepted as consistent with the objective

8

medical evidence and other evidence…." 20 C.F.R. § 404.1529(a)(1). The Regulations further promise, "we will not reject your statements about the intensity or persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements." *Id*. at § 404.1529(c)(2). Discounting Plaintiff's credibility because her testimony and statements were "not fully consistent" with the medical evidence runs afoul of these Regulations. In addition, to the extent the ALJ relied only on an absence of medical evidence supporting Plaintiff's testimony, the ALJ's credibility assessment conflicts with Social Security Ruling 96-7p, which states, "allegations concerning the intensity and persistence of pain or other symptoms may not be disregarded solely because they are not substantiated by objective medical findings." 1996 WL 374186, *6 (July 2, 1996).

The ALJ continued to impose an erroneous legal standard in his next observation that "[t]he claimant's allegations are not fully supported by the opinions of record." (Doc. #4, *PageID* #50). The Regulations do not require a claimant's testimony to be fully supported by the opinions in the record. Instead, the Regulations permit ALJs to consider the extent to which a claimant's statement "can be reasonably accepted as consistent with … other evidence" (referring to treating or non-treating medical source's reports or other reports). *See* 20 C.F.R. § 404.1529(a)(1). And, as a factual matter, substantial evidence does not support the ALJ's conclusion that the record-reviewing medical source's opinions did not fully support Plaintiff's credibility. Dr. Amiri found that Plaintiff's report about her limitations "(foot drop, pain, and

9

numbness …) are consistent w/ her impairments and the findings. [Claimant's] statements are fully credible." (Doc. #4, *PageID* #137). Dr. Amiri recognized that the medical records show Plaintiff "does have a history of anxiety and depression." *Id.* And, Dr. Amiri thought Plaintiff's statements regarding her mental limitations were "partially credible." *Id.* Previously, during the initial review of Plaintiff's disability application, Dr. Cacchillo found that Plaintiff's "reported limitations (foot drop, pain and numbness in LE's [lower extremities] are consistent w/ her impairments and the findings." Id. at 108. Dr. Cacchillo therefore concluded that Plaintiff was "fully credible." *Id*. To be sure, the ALJ was not bound to find Plaintiff credible due to either Dr. Amiri's or Dr. Cacchillo's credibility opinions. *See* Soc. Sec. R. 96-7p, 1996 WL 374186, *8. But, the fact that both physicians found Plaintiff "fully credible" as to her physical limitations stands in direct contrast to the ALJ's conclusion that Plaintiff's testimony was not fully supported by the medical opinions of record. As a result, it was unreasonable for the ALJ to rely on either Dr. Amiri's or Dr. Cacchillo's opinions to discount Plaintiff's credibility.

The Commissioner's arguments incorrectly add reasons to the ALJ's credibility assessment that the ALJ did not provide. For example, the Commissioner contends that the ALJ considered Plaintiff's activities of daily living, her ability to interact with others, and her reports to the agency about her ability to work when assessing her credibility. This, however, reaches well beyond the ALJ's explanation for discrediting Plaintiff's testimony and statements. Although the ALJ did mention elsewhere in his decision her ability to interact with other, her reports to the agency, and her testimony

10

about her daily activities, the ALJ did not refer to this evidence or connect it to his conclusion that her credibility was wanting. Instead, the two paragraphs the ALJ's reasons for discounting Plaintiff's make no mention of Plaintiff's daily activities or compare them to her testimony, as the Regulations require. *See* 20 C.F.R. § 404.1529(c) *see also* Doc. #4, PageID #s 50-51. The same is true of Plaintiff's ability to interact with others—the ALJ did not rely on this as a reason for finding Plaintiff less than credible. Indeed, the ALJ's evaluation of Plaintiff's credibility was more general in scope than the Commissioner acknowledges and was based on incorrect legal criteria, as explained above. *See id*.

Accordingly, the ALJ's assessment of Plaintiff's credibility failed to apply the correct legal criteria and was unsupported by substantial evidence.

## V.

A remand is appropriate when the ALJ's decision is unsupported by substantial evidence or when the ALJ failed to follow the Administration's own Regulations and that shortcoming prejudiced the plaintiff on the merits or deprived the plaintiff of a substantial right. *Bowen*, 478 F.3d at 746. Remand may be warranted when the ALJ failed to provide "good reasons" for rejecting a treating medical source's opinions, *see Wilson*, 378 F.3d at 545-47; failed to consider certain evidence, such as a treating source's opinions, *see Bowen*, 478 F.3d at 747-50; failed to consider the combined effect of the plaintiff's impairments, *see Gentry v. Comm'r of Social Sec.*, 741 F.3d 708, 725-36 (6th Cir. 2014); or failed to provide specific reasons supported by

substantial evidence for finding the plaintiff lacks credibility, *see Rogers*, 486 F.3d at 249.

Under sentence four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Consequently, a remand under sentence four may result in the need for further proceedings or an immediate award of benefits. *E.g., Blakley*, 581 F.3d at 410; *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994). The latter is warranted where the evidence of disability is overwhelming or where the evidence of disability is strong while contrary evidence is lacking. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).

A judicial award of benefits is unwarranted in the present case because the evidence of disability is not overwhelming and the evidence of disability is not strong while contrary evidence is lacking. Plaintiff argues that a remand for benefits is warranted due because the ALJ incorrectly failed to utilize the vocational expert's testimony that no jobs are available for a hypothetical person with Plaintiff's work limitations who—like Plaintiff—was also off task 10 percent of the work day (in addition to normal breaks). The evidence of Plaintiff's need for such breaks would be overwhelming, or strong while contrary evidence is lacking, depends on her credibility. Because the ALJ did not consider Plaintiff's credibility under the correct legal standards, her credibility has yet to be examined at the administrative level as required by law. *Faucher*, 17 F.3d at 176 ("court can reverse the decision and

immediately award benefits only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits.").

However, Plaintiff is entitled to an Order remanding this case to the Social Security Administration pursuant to sentence four of § 405(g) due to the problems discussed above. On remand, an ALJ should be directed to evaluate the evidence of record, including Plaintiff's testimony and the other evidence of record, under the applicable legal criteria mandated by the Commissioner's Regulations and Rulings, and by case law; and to evaluate Plaintiff's disability claim under the required five-step sequential analysis to determine anew whether she was under a disability and whether her applications for Disability Insurance Benefits and Supplemental Security Income should be granted.

**IT IS THEREFORE ORDERED THAT**:

1. The Commissioner's non-disability finding is vacated;

2. No finding is made as to whether Plaintiff Pamela S. Haley was under a "disability" within the meaning of the Social Security Act;

3. This matter is **REMANDED** to the Social Security Administration under sentence four of 42 U.S.C. § 405(g) for further consideration consistent with this Decision and Entry; and

4. The case is terminated on the Court's docket.

September 25, 2017                 *s/Sharon L. Ovington*
                                                     Sharon L. Ovington
                                                       United States Magistrate Judge